Ascher Katz, J.
Summary proceeding for nonpayment of *762 rent. The tenant pleads a general denial and three affirmative defenses: (1) payment, (2) that the proceeding is a retaliatory eviction against the tenant for asserting his statutory rights pursuant to the lease agreement, and (3) that the lease provision waiving any counterclaim in a summary proceeding is void as against public policy, is in violation of a statutory right and is unconscionable pursuant to section 235-c of the Real Property Law. In addition to the affirmative defenses, the tenant pleads five counterclaims: (1) breach of warranty of habitability and of covenant of quiet enjoyment for petitioner’s failure to preclude the parking of cars in front of tenant’s bedroom window in an area containing a fire hydrant, alleging a loss of $75 a month for a total of $1,125, (2) that the landlord instituted the action as a form of harassment when the rent has been paid, alleging $750 damages, (3) reasonable attorney’s fees in the sum of $550, (4) alleged harassment of the tenant by physically assaulting the tenant by landlord’s employees alleging $2,500 damages and (5) damages sustained in increase for electricity due to water leaks in the drying of rugs in the sum of $9.80.
Petitioner moves to dismiss the counterclaims pursuant to an express waiver contained in the subject lease.
The quest for justice in landlord and tenant relationships has been an arduous pursuit. At common law the only remedy to gain possession of real property was ejectment. (Butler v Frontier Tel. Co., 186 NY 486; Michaels v Fishel, 169 NY 381, 388-390.) This often resulted in a denial of justice through inordinate delay, and the summary proceeding to secure a swift detemination of the landlord’s claim to real property was given sanction. (Reich v Cochran, 201 NY 450, 454.) One obvious deterrent to swift disposition is the counterclaim with its attendant delay of proceedings, and to meet such a challenge, lease provisions waiving counterclaims have widespread acceptance. Such a waiver has been held not to offend public policy and constituted, at most, only a waiver of a procedural right. (Amazon Mgt. Corp. v Paff, 166 Misc 438; Linker v Herard, 13 Misc 2d 445.) But preservation of the simplicity of summary proceedings leaves unresolved the need for judicial scrutiny into the piracy practiced by some landlords on tenants in a limited housing market. Examples of predatory landlord conduct are found in such cases as Morbeth Realty Corp. v Rosenshine (67 Misc 2d 325); Amanuensis Ltd. v Brown (65 Misc 2d 15); Morbeth Realty v Velez (73 Misc 2d *763 996); Steinberg v Carreras (74 Misc 2d 32). A legislative response was the enactment of section 235-b of the Real Property Law, providing for a warranty of habitability in real property to eliminate the medieval concepts of caveat lessee and to obviate the cumbersome judicial case by case evolution of the doctrine of implied warranty of habitability. "By one large step this bill moves the law of landlord and tenant into the twentieth century.” (Governor’s Message of Approval, Aug. 1, 1975, L 1975, ch 597, NY Legis Ann, 1975, p 437.)
Construing section 235-b of the Real Property Law and section 743 of the Real Property Actions and Proceedings Law (allowing tenants to raise legal or equitable defenses) and noting the policy of avoiding circuity of actions, the court in Bianchi v Ficoratto, (83 Misc 2d 996) found that the court was required to hear an affirmative defense in a summary proceeding.
With this background we now consider the impact of section 235-c of the Real Property Law in this case of first impression. The Governor’s Message of Approval of this new section specifically engrafts the spirit of section 2-302 of the Uniform Commercial Code, striking down unconscionable commercial contracts, into landlord and tenant relationships. (See Tai On Luck Corp. v Cirota, 35 AD2d 380; SKD Enterprises v L & M Offset, 65 Misc 2d 612; Seabrook v Commuter Housing Co., 72 Misc 2d 6; Harwood v Lincoln Sq. Apts., 78 Misc 2d 1097, cited in Governor’s Message of Approval, July 26, 1976, L 1976, ch 828, NY Legis Ann, 1976, p 406.) The official commentary of section 2-302 of the Uniform Commercial Code suggests a forthright judicial policing against unconscionable commercial contracts (see Williams v Walker-Thomas Furniture Co., 350 F2d 445; Frostifresh Corp. v Reynoso, 52 Misc 2d 26, revd in part 54 Misc 2d 119) without resorting to such stratagems as grotesque construction of language, manipulation of rules of offer and acceptance, or rationalizing that a contract clause violates public policy or is contrary to the dominant purpose of the contract.
On the papers before the court, it does not appear that the petitioner has engaged in that type of predatory conduct that the statutes are designed to protect against. For example, this petitioner admittedly furnished tenant with an industrial dehumidifier to remove dampness, and the tenant now counterclaims for $9.80 for increase in estimated electrical charges resulting. This appears to be the obverse of the gross omission *764 of the landlord in Harwood v Lincoln Sq. Apts. (78 Misc 2d 1097, supra).
There are other practical problems in permitting a counterclaim in a case of this nature. There is the limited ability of the parties to marshal the proof necessary for full development of the personal injury claim alleged in the counterclaim. There has been no exchange of medical information. There is no indication that any carrier that should be involved is in fact involved. However, case by case approach is necessary. "It will be the courts’ function to fashion remedies appropriate to the facts in each case” (Governor’s Message of Approval of Real Property Law, § 235-b, Aug. 1, 1975, L 1975, ch 597, NY Legis Ann, 1975, p 437).
Section 235-c of the Real Property Law reads in part as follows: "2. When it is claimed * * * that a lease or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its setting, purpose and effect to aid the court in making the determination.” (Emphasis supplied.)
The court views this language in the context of the legislative history and judicial background in this area as mandating an inquiry on the issue of unconscionability. Motion to dismiss denied. Accordingly, the parties shall appear for trial 11 days from the date hereof at 2:00 p.m. prepared to proceed on all issues.