143 N.J. Super. 222 (1976)
362 A.2d 1250
EDGEMERE AT SOMERSET, PLAINTIFF,
v.
BARBARA JEAN JOHNSON, ET AL., DEFENDANTS.
Superior Court of New Jersey, District Court  Somerset County.
March 23, 1976.
*223 Mr. Elias L. Schneider, attorney for plaintiff (Messrs. Schneider and Arenofsky).
Mr. Jack C. Feinstein, Staff Attorney for defendants (Somerset-Sussex Legal Services).
GAYNOR, J.C.C.
The above designated cases present common issues of law and fact and, accordingly, this opinion and decision will be applicable and dispositive of each of said actions.
At the outset we wish to state that the issues do not involve matters relating to whether plaintiff landlord has furnished or is furnishing the services required under the tenancy agreements, or has maintained or is maintaining the premises in a habitable condition, or has engaged in or is engaging in any acts of retaliation against tenants, or has pursued or is pursuing any conduct which is violative of the rights of its tenants. We mention this specifically so that there may not be any misunderstanding as to the limited nature of the issue presented in these actions for decision by this court.
Plaintiff seeks summary dispossession of defendants pursuant to N.J.S.A. 2A:18-61.1(f) because of their nonpayment *224 of rental increases effective December 1, 1975. Defendants contend that the rental increases are unconscionable and do not comply with applicable laws and municipal ordinances, and hence are not permissible under the aforesaid statute. It is conceded that the increases are in excess of amounts allowable under guidelines set by the Franklin Township Rent Leveling Board (Board) but are in accord with the maximum rentals prescribed by the Department of Housing and Urban Development (HUD). Thus, the threshold question submitted to the court is whether under the existent circumstances the prescription by HUD is preemptive of the action of the Board. A secondary issue is whether the increased rentals are unconscionable.
Plaintiff is the owner of a garden apartment complex consisting of 398 rental units, having acquired it by purchase from the Federal Housing Administration in September 1974. The purchase was financed with a mortgage insured by HUD in accordance with the National Housing Act, 12 U.S.C.A. § 1702 et seq. Upon application of plaintiff to HUD, that agency, pursuant to its Regulation 24 C.F.R., Part 403 (40 F.R. 4951-8), declared that the rentals permitted under the guidelines of the Board were insufficient to protect the economic interest of HUD in the project and that the appropriate rentals should be those as increased by plaintiff effective December 1, 1975. In issuing this directive HUD specifically noted that its action preempted any local law or regulation inconsistent therewith. No suggestion has been made that HUD's determination of the necessary rent level is unsupported by data as to the operating expenses of the project, or that HUD lacks the authority to establish maximum rentals for the subject premises.
The preemptive effect of HUD's determination as to the minimum rent levels for the subject premises was contained in the following notice issued by that department to the Board:
*225
 To: Franklin Township Rent Leveling Board
 Municipal Building
 Franklin Township
 Somerset County, New Jersey 08873
I, Fred W. Pfaender, Director, Office of Loan Management, do hereby certify to the following:
1. I have reviewed the data submitted by the mortgagor of the captioned project and the written report of the Newark HUD Area Office, in support of the requested rent increase, and have determined that the present rent levels were insufficient to meet operating expenses and debt service which justified approval of the rent increase authorized by HUD.
2. The increased rent is the minimum amount of rent required to meet operating expenses and debt service requirements, and I hereby conclude that the decision of the Franklin Township Rent Leveling Board, which prevents implementation of the rent increase approved by HUD, will jeopardize the Department's economic interest in the project.
3. Pursuant to Title 24 CFR Part 403 (40 F.R. 49318), the Department of Housing and Urban Development hereby preempts your regulation of rentals over the captioned project.
 (s) Fred W. Pfaender 
 Fred W. Pfaender
 Director
 Office of Loan Management
The subject housing units qualify as an "unsubsidized insured project," and the pertinent portions of the agency's regulations authorizing the action taken by HUD are as follows:
Re:

§ 403.1 Scope and effect of regulations.
(a) The regulation of rents for a project coming within the scope of "Subpart B  Unsubsidized Insured Projects" is preempted under these regulations only when the Department determines that the delay or decision of the local rent control board, or other authority regulating rents pursuant to state or local law (hereinafter referred to as board) jeopardizes the Department's economic interest in a project covered by that subpart...
(b) Any state or local law, ordinance, or regulation is without force and effect insofar as it purports to regulate rents of (i) projects for which a determination of preemption has been made pursuant to Subpart B, or (ii) projects coming within the scope of Subpart C or D. Compliance with such law, ordinance, or regulation shall not be required as a condition of, or prerequisite to, the remedy of eviction, and any law, ordinance, or regulation which purports *226 to require such compliance is similarly without force and effect.
(c) It is the purpose of the Department that these regulations shall bar all actions of a board that would in any way frustrate the purpose or effect of these regulations or that would in any way delay, prevent or interfere with the implementation of any increase in rental charges approved by HUD.

* * * * * * * *

§ 403.5 Rental charges.
The Department will generally not interfere in the regulation by a local rent control board (hereinafter referred to as board) of rents for unsubsidized projects with mortgages insured or held by HUD. However, HUD will preempt the regulation of rents for such a project when the Department determines that the delay or decision of a board, or other authority regulating rents pursuant to state or local law, jeopardizes the Department's economic interest in the project.

§ 403.6 Procedures.
(e) The Office of Loan Management will review the report and will consider whether to approve rents higher than those approved by the board, or to approve a rent increase notwithstanding the failure of the board to reach a decision on the application. If the decision of the Office of Loan Management is to approve (1) rents higher than those approved by the board, or (2) a rent increase notwithstanding the delay of the board in reaching a decision, it shall issue a formal certification that it has preempted local rent controls as to such rents in order to protect the Department's economic interest in the project. Copies of the certification shall be transmitted to the mortgagor, the local HUD Office, the Regional Office, and the board.
The motivation for the assumption of such control over rents of subsidized projects as well as those financed by a federally insured mortgage was the determination by HUD that local rent control was a significant factor in causing owners of such projects to default on their mortgage payments, thereby occasioning a substantial number of mortgage insurance claims being made upon HUD. Inasmuch as each mortgage claim requires the expenditure of a considerable sum of money by the federal agency, it was concluded that HUD had an overriding interest to preempt local actions which contribute to such claims. It was also determined that, although local rent control ordinances generally provide for annual or hardship increases, in many instances the increases permitted bore no relationship to actual operational *227 and maintenance costs, and often the local proceedings were so cumbersome and took so long that any increase which was allowed came too late to prevent a default situation. Preemption of control over the rentals of subsidized and unsubsidized projects was considered to be the only effective means available to protect the economic interest of the federal department. The authority for such action was found in the legislative authorization granted to HUD to carry out the purposes of the national Housing Act of 1937 and the Housing Act of 1959, which provide for the regulation of rents.
In support of their position defendants argue that there has not been a sufficient showing by plaintiff to overcome the presumption against preemption of a local ordinance by a federal regulation, and further, that a conclusion that such preemption existed would be tantamount to a determination that the local ordinance was unconstitutional. Additionally, defendants assert that the subject rental increases are unconscionable and therefore, under the terms of N.J.S.A. 2A:18-61.1(f), the court need not grant to plaintiff possession of the subject premises because of the failure or refusal of defendants to pay said increases. As authority for their primary contention defendants cite Druker v. Sullivan, 334 F. Supp. 861 (D. Mass. 1971); Columbia Plaza Ltd. Partnership v. Cowles, 403 F. Supp. 1337 (D.D.C. 1975); Helmsley v. Fort Lee, 362 F. Supp. 581 (D.N.J. 1973); Stoneridge Apts. Co. v. Lindsay, 303 F. Supp. 677 (S.D.N.Y. 1969); Pelham Towers v. Conciliation Appeals Bd., 71 Misc.2d 814, 337 N.Y.S.2d 485 (Sup. Ct. 1972), and Bianchi v. Ganz, 82 Misc.2d 478, 369 N.Y.S.2d 611 (City Ct. 1974). However, these cases were decided prior to the promulgation of the final regulation involved in the present actions and did not consider a determination of preemption by HUD as was issued with respect to the rentals chargeable by plaintiff. The cited cases were concerned with maximum rent levels established by HUD which did not present conflicts with local regulations, and thus they are inapposite *228 to the issue in the instant cases. As stated by the court in Columbia Plaza Ltd. Partnership v. Cowles, supra, "the preemption issue * * * turns on the question whether there is an actual conflict between the federal and local laws," and the establishment of a permissive maximum rent by the federal agency which does not prevent compliance with the local regulation prescribing rents lower than such maximum does not present such a conflict. Similarly, in Helmsley v. Fort Lee, supra, the court noted that the subject rent control ordinance did not offer unavoidable conflict with the federal policy allegedly established by the HUD action in setting maximum rent levels inasmuch as compliance with both regulations was not inconsistent.
The test set out by the United States Supreme Court for application of the Supremacy Clause is that there must be "such actual conflict between the two schemes of regulation that both cannot stand in the same area," or "evidence of a congressional design to preempt the field." Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 141, 83 S.Ct. 1210, 1216, 10 L.Ed.2d 248. It is clear that the national Housing Act itself is not a rent control measure and was never meant to preempt the sphere in which local rent control boards operate. See Columbia Plaza Ltd. Partnership v. Cowles, supra at 1342; Helmsley v. Fort Lee, supra at 590-91; Stoneridge Apts. Co. v. Lindsay, supra at 680. However, here a federal agency, acting pursuant to a congressional mandate, has promulgated a regulation having the force and effect of a statute, which can if utilized directly conflict with local rent control board action. The substitution of the term "increases in rental charges" used in § 403.6 for the term "maximum permissible rents" was for the purpose of making clear that in acting upon a request for a rent increase, HUD would determine the minimum rents necessary to assure payment of debt service, operating expenses, and return on investment. This wording substitution specifically avoids the situations presented in the cases cited by defendants in which both the federal and local rental mandates *229 could be complied with. There can be no doubt of HUD's action as to this particular project since the notice to the Board dated October 30, 1975 stated that "the present rent levels were insufficient to meet operating expenses and debt service," and that "the increased rent is the minimum amount of rent required" to meet these costs. Further, it is clearly impossible for plaintiff in any manner to be in compliance with both the HUD minimum and the Board maximum. This is precisely the situation to which the Supreme Court indicated the Supremacy Clause would apply. Thus, the conclusion is inescapable that HUD's declaration stating that it had expressly preempted the sphere of rent control as to the subject project and declaring the subject ordinance inoperative as to that property carries with it the full weight of constitutional authority and succeeds in doing that which it purports to do. Therefore, we find that an increase up to the rental minimum established by HUD is a lawful rent in accordance with N.J.S.A. 2A:18-61.1(f).
We do not consider that the preemption by HUD of control of the minimum rents chargeable by plaintiff precludes this court from a consideration of whether such rent increases are unconscionable and therefore preclude dispossion by reason of nonpayment. N.J.S.A. 2A:18-61.1(f). Unconscionableness is an indefinite standard and difficult to measure. It has been defined in terms of actions which would not be acceptable to any fair and honest man, or conduct which is monstrously harsh and shocking to the conscience. Black's Law Dictionary (4 ed.); Toker v. Westerman, 113 N.J. Super. 452 (Cty. D. Ct. 1970). In the context of such definitions and the general knowledge of the court as to prevailing rents in the area of plaintiff's project, we cannot say that the rent increases effective December 1, 1975 are unconscionable within the meaning of N.J.S.A. 2A:18-61.1(f). Although the percentage of the increase is large, the determinative factors are whether the resulting rent is so great as to shock the conscience of a reasonable person and was effected for the purpose of compelling *230 the tenant to vacate. We do not consider that either factor is applicable in the present case.
Accordingly, for the above-stated reasons we conclude that the defenses raised by defendants are without merit and that the increased rents were due and payable. Inasmuch as it has been necessary to make this preliminary determination as to the validity of the subject rents, we believe that it would be appropriate to provide a reasonable time for payment of the increases by defendants. Therefore, the entry of judgments for possession of the premises will be deferred for 30 days to permit such payment by defendants or to arrange with plaintiff for an acceptable plan for installment payments.